Ray WADE *v.* Bob TOMLINSON, Sheriff of Lawrence County and ALL Others Similarly Situated.

CR 84-187                                                682 S.W.2d 751

Supreme Court of Arkansas
Opinion delivered January 21, 1985

Petitioner, *Pro Se.*

*Steve Clark,* Att'y Gen. by: *Theodore Holder,* Asst. Att'y Gen., for appellee.

PER CURIAM. Ray Wade has petitioned for habeas corpus and certiorari which we granted in part to bring up the record. The record reflects that petitioner is in custody of the sheriff of Lawrence County under a charge of terroristic threatening in violation of Ark. Stat. Ann. § 41-1608, having allegedly threatened to kill Helen Wade.

The State moved to commit the petitioner to the State Hospital for observation pursuant to Ark. Stat. Ann. § 43-1304, and when the petitioner refused to waive insanity as a defense, the circuit judge granted the motion. While that commitment was awaiting execution petitioner filed the habeas corpus petition. By amendment filed December 19, 1984, we are told petitioner has been transfered to the

Arkansas State Hospital for nervous diseases pursuant to the order. Whether petitioner has been returned to the custody of the sheriff of Lawrence County is not diclosed.

Several lengthy petitions for habeas corpus and certiorari have been filed in this court subsequent to the issuance of the writ of certiorari to bring up the record, none of the state grounds for habeas corpus relief pursuant to Ark. Stat. Ann. § 34-1701 et seq. (Repl. 1962). The petitioner is in custody pursuant to a process which appears regular and valid on its face and the Circuit Court of Lawrence County has jurisdiction to try the petitioner on the charge pending against him. *Mitchell* v. *State,* 233 Ark. 578, 346 S.W.2d 201 (1961).

Assuming petitioner has been returned to Lawrence County he will doubtless be tried expeditiously or given another opportunity for a release on his own recognizance in accordance with A.R.Cr.P. Rule 5.1. We note that on November 1, 1984, the circuit judge pointedly gave petitioner that opportunity, but declined to release him because he refused to make a single, direct response to the court that he would appear for trial or hearing as directed. Rule 5.1(d) "Release on own recognizance" defines a release without bail as requiring the defendant to promise to appear at all appropriate times before the court. Unless petitioner is willing to give that assurance to the court, he is not entitles to release prior to trial other than by bail.

Petition denied.

PURTLE J., dissenting. I disagree with the majority because I think the petitioner is entitled to relief either by way of Habeas Corpus or release on his own recognizance. It is necessary to state enough of the facts to enable the reader to understand what has transpired in this case up until the present time.

On June 5, 1984, the prosecuting attorney filed an information in which Ray Wade was charged with terroristic threatening pursuant to Ark. Stat. Ann. § 41-1608. An attached affidavit executed by Jim Stallcup reads as

follows: "I have investigated this matter and the facts justify the filing of the charge." No other affidavit or statement is in the record. A bench warrant was served on June 8, 1984, at which time petitioner was taken into custody and detained in the Lawrence County Jail.

On June 11, 1984, the appellant was advised of his constitutional rights. The first advice given to the petitioner was, "YOU HAVE THE RIGHT TO REMAIN SILENT." On June 12, 1984, the petitioner filed for a writ of Habeas Corpus in the Lawrence County Circuit Court. The following day he filed a petition to be released on his own recognizance. The same day about 36 friends and relatives of the petitioner presented a statement in support of the petitioner's request for release on his recognizance. He was taken before Municipal Judge Harry Ponder on June 14, 1984, and was released on his own recognizance on condition that he not disturb his wife.

So far as the record revealed, nothing officially transpired in this case until October 8th, 1984, at which time the petitioner voluntarily appeared before the Lawrence County Circuit Court, Judge Andrew Ponder presiding, for arraignment on the charge of terroristic threatening. The court informed petitioner that he would have to give spoken answers. The court stated, "Can you hear me? But you don't want to answer me? Is that what it is? Alright. Mr. Sheriff, if you will, the defendant is in your custody, until he decides that he can conduct himself like other people and answer civil questions from the court." On the same date the state filed a petition and the court entered an order the next day (October 9, 1984) committing the petitioner to the State Hospital for observation for a period of not less than 30 days. He was transported to the state hospital on December 13, 1984. An answer to petitioner's request for Habeas Corpus was filed, on behalf of the respondents, by attorney Harry L. Ponder, on October 19, 1984.

On or about October 29, 1984, petitioner, and his friend, commenced filing pleadings in this court. The original pleading was a petition for Habeas Corpus. Various and numerous pleadings were subsequently filed in the Law-

rence County Circuit Court and in this court. A trial or hearing of some sort was commenced in the Lawrence County Circuit Court on the first day of November, 1984. On this date or some unspecified previous date an attorney had been appointed by the court to represent the petitioner. The first question presented to the court by the attorney was "Your Honor, for the purpose of the . . . for my benefit, could the court state the grounds for Mr. Wade being in jail at present." Response by the court was as follows; "Mr. Westerfield, you don't have to inquire. The reason I had him brought around was not at your request, but — I will make myself clear." The court then explained that it had attempted to inquire of Mr. Wade about setting bond and explaining the charges on October 8, 1984. The court stated that since Mr. Wade would not respond he was asked whether he could hear the questions by the court and he nodded in the affirmative. The court then stated, refering back to the hearing of October 8, 1984: "And I said, 'Well then, am I correct in assuming that you can hear me but you just don't want to answer?' and he nodded with his head in such a way that I thought he meant yes. So he was placed in jail because it appeared to the court that he was not competent at that time to appear without an attorney. And the court could get no response from him." The court went on the explain why petitioner was being held in jail by stating, "He's not being held for punishment of any sort. He's being held because they can't take him at the State Hospital and his behavior has been bizarre enough that the state felt that a defense of insanity might well be sought." The court then went on to explain that he would be inclined to let petitioner out on some sort of bond if there was assurance that he would report to the sheriff's office when it came time to take him to the State Hospital. Mr. Westerfield then informed the court that the petitioner did not desire Westerfield's assistance. Mr. Westerfield then told the court that petitioner had informed him "[that he] would report back to the court at whatever time the court appointed. He was, I believe, on some type of bond. Perhaps an O.R. Bond. . . . from June until October. And Mr. Wade, from talking with him, has advised me that if the court tells him to be back here on December 3, or November 20, or January 1, or whenever, he will be here . . . whether its for the court or whether its for transport-

ation to the State Hospital for observation." The court then inquired whether Mr. Wade (petitioner) wanted to tell the court that he would be back when the court told him too. The appointed attorney then asked petitioner if he would be back. The court replied, "No, Mr. Westerfield, I am not talking about from Wade to Westerfield to Stallcup to Ponder. And you know I am not. Mr. Wade knows that I am not. Do you want to assure this court that you will be back here whenever we want you back? Alright. That concludes this hearing." Petitioner was then returned to jail.

This court entered Certiorari on November 27, 1984, but ordered the expense of the record to be paid by the petitioner. A statement of indigency was filed in this court but it was not acted upon and petitioner's friend paid our filing fee of $100.00. The clerk charged $295.55 and the court reporter $30.00 for the 150 page record, including the 11 pages of testimony and court proceedings. The record was lodged in this court on December 6, 1984. Petitioner was committed to the State Hospital for observation on December 13, 1984. He was found without mental disease or defect and released to the Lawrence County Sheriff on December 24, 1984. An amended petition was tendered to this court on December 31, 1984. In addition to the numerous allegations previously filed the latest amended petition alleges that petitioner is suffering from diabetes for which treatment is required but refused by the Lawrence County Sheriff's Department. This amended petition also points out that petitioner was denied access to the law library and books as well as writing materials.

The facts of this case are indeed unusual. Petitioner was picked up on a charge of terroristic threatening. There is no supporting factual affidavit by anyone which even attempts to describe any act of terroristic threatening. In fact the wife, who may have been complianing party, has filed an affidavit wherein she declares she is not afraid of petitioner and joins in a request for his release. It has been more than seven months since petitioner was arrested and placed in jail. He was sent to the State Hospital on the motion of the state even though there had been absolutely no hint that he would plead mental disease as a defense. To this date the

record does not show that he has entered a plea or even been read the charges against him. Apparently he is in limbo at this time.

The criminal charge of terroristic threatening was filed against petitioner many weeks after the information alleges the threat occurred. If the wife was the source of the information upon which the charge was founded, it seems the likelihood of conviction is slim because she has recanted, if in fact she ever told anyone she was afraid of her husband. Judge Andrew Ponder released the man on his own recognizance at the probable cause hearing. Judge Andrew Ponder apparently revoked this bond even though the accused appeared at the time and place scheduled for a plea and arraignment. The reason appears that petitioner stood upon his right to remain silent as he had been informed he had the right to do. He is now held in prison because he elected to stand upon his constitutional right to remain silent. He had been a resident of the same county for over 35 years and a host of friends and neighbors attempted to point out to the court that petitioner was entitled to be released upon his own recognizance. His parents have agreed to cooperate in seeing that he would report as directed by the court. He is suffering from a life threatening disease for which he is allegedly denied treatment while being held in a county jail.

It seems to me the courts are being used to coerce the petitioner into talking to the judge. No reason is shown which would have prevented this prisoner from already having been tried. From the appearance of the record the trial should be a short one. A person may be denied a speedy trial within the meaning of the Constitution in a period of time less than those enumerated in our Rules of Criminal Procedure. Our Rules set the outside limits within which a person must be tried or released.

I will admit that some of the material filed on behalf of petitioner does nothing to assist in moving this case along. Such material should be ignored. The defendant, however, should be granted his freedom pending a fair and impartial trial at the earliest possible convenience of this court. He is

entitled to be convicted or found not guilty promptly. At the very least he is entitled to be released pending trial.

The order sending petitioner for observation requires that he be kept for *not less than 30 days.* Arkansas Stat. Ann. § 43-1306 requires that the period of observation *not be more than 30 days.* Obviously it took the hospital far less than 30 days to determine the accused was not suffering from mental disease or disability. Petitioner did not request nor did he desire to be committed for observation. He gave no indication that he would make a defense based upon his mental condition. The effect of the committment was to prolong his incarceration rather than protect him. Such committments are expensive and wasteful of the human resources of the state and should be used only where there is some clear indication that the defense of mental disease will be employed.

I would grant the petition.